IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CONNECTICUT GENERAL LIFE INSURANCE COMPANY,

    Plaintiff,

  v.

OWEN J. RAMSEY III and DIANE RAMSEY,

    Defendants.    /

No. Civ. S-07-0819 RRB EFB

**Memorandum of Opinion and Order**

Defendants Owen J. Ramsey III and Diane Ramsey (collectively "Ramseys") move for sanctions against plaintiff Connecticut General Life Insurance Company ("Connecticut General") on the ground that Connecticut General has repeatedly sought to enforce the terms of a settlement agreement in federal court and enjoin their state action alleging illegal activity related to "vanishing premium" insurance policies.  For the following reasons, the court DENIES the motion.[1]

---

[1]  Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support

1

# I. BACKGROUND

In Spitz v. Connecticut Gen. Life Ins. Co., a class of plaintiffs alleged that Connecticut General made improper charges to and fraudulent statements regarding certain "vanishing premium" or "interest sensitive" policies.[2] See In re Connecticut Gen. Life Ins. Co., CV-95-3566, 1997 WL 910387, at *22-23 (C.D. Cal. Feb. 13, 1997). The Spitz case was consolidated with a similar action by the Panel on Multidistrict Litigation and transferred to the Central District of California. Id. at *2. On September 11, 1996, the parties entered into a settlement agreement. Id at *1-2. The agreement included an anti-suit injunction under which the class members gave up "the right to assert any and all claims, known or unknown, that they currently posses, may possess or may have possessed against [Connecticut General] . . . relating in any

---

of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[2]  The Spitz plaintiffs alleged that Connecticut General and/or its agents represented to life insurance purchasers that, after a certain date, the income from variable-interest policies would be sufficient to cover the cost of premium payments, freeing costumers from out-of-pocket premium payments. The plaintiffs further alleged that Connecticut General failed to disclose that they would be required to make premium payments if a policy's interest income was insufficient to cover its costs.

2

way to the life insurance policies that are the subject of this lawsuit." Id. at *25.  On February 13, 1997, the Central District granted final approval of the class settlement. Id. at *1-2. Although a class member challenged the sufficiency of the class notice on appeal, the Ninth Circuit affirmed the court's ruling. Spitz v. Connecticut Gen. Life Ins. Co., 172 F.3d 876 (9th Cir. 1999).

    The settlement expressly covered three policies owned by the Ramseys, which they purchased in 1986. Connecticut General argues that the Ramseys are, therefore, barred under the terms of the settlement and anti-suit injunction from bringing any claim based upon the polices. The Ramseys, however, allege that they never received notice related to the 1997 settlement and only learned about it in January 2004, after their policies lapsed without prior notice. The Ramseys also allege that, following the 1997 settlement, Connecticut General continued prior illegal practices and engaged in new ones.

    On June 20, 2005 the Ramseys filed a California state action against Connecticut General. In its answer, Connecticut General raised defenses based upon the Spitz settlement. On January 30, 2006, Connecticut General filed a motion in the Central District of California to enforce the Spitz settlement against the Ramseys. The court, finding that almost ten years had passed since the final order, denied the motion and divested

itself of jurisdiction over the case. On April 7, 2006, Connecticut General filed a motion in California state court to enforce the Spitz settlement. The state court denied the motion on May 5, 2006, finding that Connecticut General had neither complied with the procedural requirements of a res judicata defense nor provided sufficient grounds for injunctive relief. After conducting discovery in the state action, the Ramseys filed an amended complaint on November 3, 2006. On January 26, 2007, Connecticut General filed another motion in the Central District to enforce the Spitz settlement against the Ramseys. The Ramseys filed a motion to transfer venue to the Eastern District, in which they live. On April 26, 2007 the Central District granted the Ramseys' motion. On May 16, 2007, the Ramseys filed a motion to dismiss the complaint. On June 27, 2007, Connecticut General filed a motion to apply the Spitz anti-suit injunction. On July, 31, 2007, this court declined to exercise its discretionary power to enjoin the state court action on the ground that the state action was the better forum to litigate the enforceability of the Spitz settlement. The Ramseys now move for sanctions.

## II. DISCUSSION

The Ramseys argue that sanctions are appropriate because Connecticut General has: (1) filed frivolous, legally unreasonable and/or factually baseless papers in violation of

4

Rule 11; (2) unreasonably and vexatiously multiplied the proceedings in violation of 28 U.S.C. § 1927; and (3) engaged in "bad faith" tactics and "willfully disobeyed" a court order. These claims are individually addressed below.

**A.   Rule 11**

The Ramseys' move for sanctions pursuant to Rule 11 on the ground that Connecticut General has repeatedly and unreasonably filed papers in federal court seeking to enforce the Spitz settlement and enjoin their state action.  Connecticut General argues that sanctions are inappropriate under Rule 11 because the Ramseys have failed to meet Rule 11's safe harbor requirement and because a sufficient legal basis exists to seek enforcement of the Spitz settlement in federal court.

In order to be entitled to sanctions under Rule 11, a party must satisfy the strict procedural requirements of Rule 11(c)(1)(A).  Radcliffe v. Rainbow Const. Co., 254 F.3d 772, 788 (9th Cir. 2001).  Rule 11(c)(1)(A) provides in part: "A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).[3]  It shall be served

---

[3]   Rule 11(b) states, among other things, that a party is prohibited from presenting to the court a pleading or motion that: (1) is submitted for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; or (2) contains legal contentions that are not

as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A) (footnote added).  The purpose of this provision is to provide a type of "safe harbor" in that a party will not be subject to sanctions unless, within 21 days after service of the motion for sanctions, it refused to withdraw the offending paper and thereby escape sanctions. Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) (emphasis in original); Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC, 339 F.3d 1146, 1150 (9th Cir. 2003).  Where sanctions are initiated by motion, the 21 day safe-harbor period before a motion for sanctions can be filed with the court is mandatory. Truesdell v. Southern California Permanente Medical Group, 293 F.3d 1146, 1151 (9th Cir. 2002); see also Radcliffe, 254 F.3d at 789 (emphasizing that a motion for sanctions must be served on the opposing party at least 21 days before it is filed with the court).

---

warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.


In order to comply with Rule 11(c)(1)(A) the Ramseys were required to serve the motion for sanctions on Connecticut General with a demand to retract the allegedly offending paper and then to allow Connecticut General at least twenty-one days to retract the paper before filing the motion with the court. See Fed.R.Civ.P. 11(c)(1)(A). The Ramseys did not do this. Instead, the Ramseys filed their Rule 11 motion on July 13, 2007, without serving Connecticut General with the motion in advance of such filing. Thus, because the Ramseys failed to comply with the twenty-one day advance service provision, they are not entitled to sanctions under Rule 11. Moreover, to the extent that the Ramseys assert that informal notice, via a letter and telephone call is sufficient notice under Rule 11, the court rejects this assertion. The "safe harbor" requirements of Rule 11 are mandatory as it is the service of the motion that gives notice to a party and its attorneys that they must retract certain papers or risk sanctions. See Barber, 146 F.3d at 710-11 (holding that the procedural requirements of Rule 11's "safe harbor" are mandatory, and that informal warnings threatening to seek Rule 11 sanctions do not satisfy Rule 11 because it is the service of the motion that gives notice to a party and its attorneys that they must retract or risk sanctions).

For these reasons, the court DENIES the Ramseys' request for sanctions under Rule 11.

**B.  Sanctions under 28 U.S.C. § 1927**

The Ramseys' move pursuant to 28 U.S.C. § 1927 for sanctions on the ground that Connecticut General has unreasonably and vexatiously multiplied the proceedings in bad faith by repeatedly filing papers in federal court seeking to enforce the Spitz settlement.

Sanctions under § 1927 may be imposed when: (1) the attorney unreasonably multiplied the proceedings; (2) the attorney's conduct was unreasonable and vexatious; and (3) the conduct resulted in an increase in the cost of the proceedings. 28 U.S.C. § 1927; B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002)  Because sanctions under § 1927 are authorized only for the unreasonable multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun . . . [and] cannot be applied to an initial pleading." See In re Keegan Mgmt. Co. Sec. Lit., 78 F.3d 431, 435 (9th Cir. 1996) (noting that the filing of a complaint may only be sanctioned pursuant to Rule 11 or the court's inherent power, not § 1927).

Sanctions under § 1927 require a finding of recklessness or bad faith.  Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000).  An attorney's bad

faith is assessed under a subjective standard and knowing or reckless conduct meets this standard. Id. (noting that a finding of bad faith is critical, because a frivolous argument without more is insufficient to justify sanctions under § 1927). "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.' A party also demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.' " Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) (citation omitted); see New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989) (tactics undertaken with the intent to increase expenses or delay may also support a finding of bad faith, even if such arguments are meritorious); see B.K.B., 276 F.3d at 1307 ("if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass.... Reckless nonfrivolous filings, without more, may not be sanctioned"). Because "forceful and effective representation often will call for innovative arguments[,] . . . sanctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.' " Primus, 115 F.3d at 649.

"The bad faith requirement sets a high threshold" for sanctions under § 1927.  Id.

As an initial matter, the court concludes that it cannot sanction Connecticut General under § 1927 for the filing of its complaint in federal court seeking declaratory and injunctive relief because "[t]he filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent authority, but it may not be sanctioned pursuant to § 1927."  In re Keegan Mgmt. Co., Securities Litigation, 78 F.3d at 435.  This is so because § 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun."  Id.  Thus, the question becomes whether Connecticut General's motion seeking to enforce the Spitz settlement is subject to sanctions.

In this regard, the Ramseys argue that sanctions are warranted because Connecticut General's underlying theory supporting that motion, (i.e., the Spitz settlement precludes the Ramseys' pending state action), has already been rejected by several courts.  The Ramseys argue that Connecticut General has been unambiguously instructed by both federal and state judges to resolve this issue in the state action.  As such, the Ramseys argue that Connecticut General has unreasonably and vexatiously multiplied the proceedings by filing another motion seeking to enforce the Spitz settlement.  In short, the Ramseys argue that sanctions are appropriate because Connecticut General has filed

its settlement enforcement motion in bad faith for the improper purpose of harassment, which has resulted in increased costs. The court disagrees.

A review of the relevant evidence reveals that, to date, no court has determined the merits of whether the Spitz settlement precludes the Ramseys' state court action. For instance, on January 30, 2006, Judge Walter of the Central District simply divested himself of jurisdiction over Connecticut General's motion to enforce the Spitz settlement because he concluded that the Ramseys' state court action raised issues outside the settlement and because the settlement enforcement issue was already pending in the state action in the form of a res judicata defense. Exh. L, attached to Decl. of Craig Farmer ("Farmer"), In Support of Defendants' Mtn. for Sanctions at 34:23-25; 35:1; 36:1-7, 21:25; 37:1-11. Judge Walter, however, did not find that Connecticut General's motion lacked merit; rather, he denied the motion as moot so it could be raised in the state action. Id. at 37:9-11. Additionally, on April 26, 2007, following Connecticut General's second attempt to enforce the Spitz settlement in the Central District,[4] the action was transferred to the Eastern District without a determination

---

[4] On January 26, 2007, Connecticut General sought to enforce the Spitz settlement in the Central District for the second time, via a declaratory relief action, after the Ramseys' amended their complaint in the state action on November 3, 2006.

regarding the enforceability of the Spitz settlement. Exh. U, attached to Decl. of Farmer.[5] Finally, on May 5, 2007, Judge Chang of the Sacramento County Superior Court denied Connecticut General's motion to enforce the Spitz settlement on the ground that it was procedurally improper, not because it lacked merit. Exh. P, attached to Decl. of Farmer.

Based on the foregoing the court concludes that sanctions are not warranted under § 1927. While the court recognizes that Connecticut General has sought to enforce the Spitz settlement in federal court after being advised by Judge Walter to litigate this issue in state court, the court finds that Connecticut General's conduct in this regard was not frivolous, reckless, in bad faith, or motivated by an improper purpose.[6] Therefore, the

---

[5] In that order Judge Real also denied the Ramseys' motion to dismiss without prejudice. Exh. U, attached to Decl. of Farmer.

[6] While the court recognizes that sanctions are warranted on the basis of harassment where a party files successive motions based on propositions of law clearly rejected, (see G.C. & K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1110 (9th Cir. 2003)), it does not find that sanctions are warranted under the circumstances. Connecticut General's motion seeking to enforce the Spitz settlement has never been clearly rejected by any court. Rather, Judge Walter of the Central District simply divested himself of jurisdiction over the matter because he concluded that the state action included claims outside the scope of the Spitz settlement and that the state court could resolve the Spitz settlement issue since it was raised as a defense in that action. As such, Judge Walter concluded that the state action was the better forum to resolve the Spitz settlement enforcement issue, not that the Spitz settlement lacked merit as a viable defense to the Ramseys' state action or

court concludes that sanctions are not warranted because this is not the rare and exceptional case where the conduct is clearly frivolous, legally unreasonable, or motivated by an improper purpose.

For these reasons, the court DENIES the Ramseys' motion for sanctions under § 1927.

**C.  Inherent Authority**

The Ramseys' move pursuant to the court's inherent authority for sanctions on the ground that Connecticut General has engaged in bad faith tactics and willfully violated Judge Walter's order by seeking to enforce the Spitz settlement in federal court. The Ramseys argue that sanctions are appropriate because Connecticut General's conduct in this regard was motivated by the improper purpose of harassment, which has resulted in increased costs.

"A court has the inherent power to sanction a party or its lawyers if it acts in "willful disobedience of a court order ...

---

that there was no legal basis to seek enforcement of the settlement in federal court. Therefore, because Connecticut General had a legal basis to seek enforcement of the Spitz settlement in federal court, (see Adams v. Southern Farm Bureau Life Ins. Co., 2007 WL 2119182 (11th Cir. 2007) (defendant who entered into a class-action settlement, release and judgment was entitled to enforce that judgment in federal court and enjoin former class members from re-litigating claims in state court falling within the scope of that settlement and release), the court concludes that sanctions are not warranted. The court does not find that Connecticut General's conduct has exceeded the bounds of zealous advocacy.

or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' as well as for 'willful[ ] abuse [of the] judicial processes.' "  Gomez v. Vernon, 255 F.3d 1118, 1133-34 (9th Cir. 2001) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)).  Awarding sanctions under the court's inherent power requires a finding of bad faith, or conduct tantamount to bad faith.  Gomez, 255 F.3d at 1134; Thomas Kinkade Co. v. Hazlewood, 2007 WL 1655846, *5 (N.D. Cal. 2007).  "Under this standard, although recklessness, of itself, does not justify the imposition of sanctions, sanctions are available when recklessness is 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'  Sanctions, then, are justified 'when a party acts *for an improper purpose*-even if the act consists of making a truthful statement or a non-frivolous argument or objection.' "  Gomez, 255 F.3d at 1134 (citing Fink v. Gomez, 239 F.3d 989, 992-94 (9th Cir. 2001) (emphasis in original)).  "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides,* the assertion of a colorable claim will not bar the assessment of attorney's fees."  Fink*,* 239 F.3d at 992 (quotation marks omitted).

Here, sanctions are not warranted under the court's inherent authority because the Ramseys failed to demonstrate that Connecticut General acted in bad faith or for the improper purpose of harassment. There is no evidence in the record that Connecticut General's conduct was substantially motivated by vindictiveness, obduracy, or *mala fides*. Therefore, as discussed above, because Connecticut General was entitled to seek enforcement of the Spitz settlement in federal court, and because Judge Walter's divestment of jurisdiction was not a clear rejection of Connecticut General's right to seek such relief, sanctions are not warranted under the circumstances.

For these reasons, the court DENIES the Ramseys' motion for sanctions under the court's inherent authority. The court however cautions Connecticut General that it has now been directed by this court to resolve the Spitz settlement enforcement issue in the state action.

### III. CONCLUSION

For these reasons, the court DENIES the motion for sanctions. The court also DENIES Connecticut General's counter-motion for sanctions.

**IT IS SO ORDERED.**

ENTERED this 18th day of September, 2007.

                                         s/RALPH R. BEISTLINE
                                         UNITED STATES DISTRICT JUDGE